**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ZACK KAPLAN, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>ALEXANDER MASHINSKY, *et al.*,<br><br>     Defendants. | Case No. 22-cv-4560 (SDW) (SDA)<br><br>**OPINION & ORDER GRANTING**<br>**MOTION TO TRANSFER (ECF No. 133)**<br><br>**December 18, 2025** |

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on the Motion to Transfer to the United States District Court for the Southern District of New York (ECF No. 133) filed by Defendants Harumi Urata-Thompson ("Urata-Thompson"), Alexander Mashinsky ("Mr. Mashinsky"), Jeremie Beaudry ("Beaudry"), and Kristine Meehan (s/h/a Kristine Mashinsky) ("Ms. Meehan") (collectively, the "Moving Defendants"). Lead Plaintiffs Zack Kaplan, Eli Kaplan, Ben Kaplan, Michael Kaplan, and Michael Mazzotta (collectively, the "Lead Plaintiffs") do not oppose the Motion. (ECF No. 135). Defendant Wintermute Trading Ltd. ("Wintermute") also does not oppose the motion, provided that its right to assert a defense of lack of personal jurisdiction in the transferee District Court is preserved. (ECF No. 136). The remaining Defendants have not responded to the Motion. The Moving Defendants then filed a Reply. (ECF No. 138).

The Court decides this Motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Motion to Transfer is **GRANTED**, and the instant Civil Action shall be transferred to the United States District Court for the Southern District of New York ("S.D.N.Y.").

## FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY

The instant Civil Action was commenced in the District of New Jersey on July 13, 2022. (ECF No. 1). The Amended Complaint, which asserts putative securities class action claims, was subsequently filed on June 19, 2023. (ECF No. 46). Lead Plaintiffs, following their appointment to that role by this Court on April 14, 2023 (ECF Nos. 40, 41), brought the putative class action claims pursuant to the Private Securities Litigation Reform Act ("PSLRA") against nine Defendants: Mr. Mashinsky, Shlomi Leon ("Leon"), Hanoch Goldstein ("Goldstein"), Urata-Thompson, Beaudry, Ms. Meehan, AM Ventures Holding, Inc. ("AMVH"), Koala1 LLC ("K1"), and Wintermute (collectively, the "Defendants"). (ECF No. 46).

The Amended Complaint, which is brought on behalf of those who purchased cryptocurrency and other financial products from Celsius Network, LLC ("Celsius"), embodies an effort to recover damages that were subsequently suffered when the value of those investments was wiped out due to fraud and severe mismanagement allegedly committed by Mashinsky and the other Defendants. (ECF No. 46 ¶ 2). Celsius was a company operated by several of the individual Defendants that provided cryptocurrency-related financial services to customers, such as reward accounts, "tokens," and loans. (*Id.* ¶ 1). Celsius sold its services and investments, through which investors lent crypto-assets to Celsius in exchange for a promise by Celsius to provide a better-than-market variable monthly interest payment to be paid in cryptocurrency. (*Id.* ¶¶ 3, 4). Unfortunately, those accounts and services were neither protected by the Securities Investor Protection Corporation, nor insured by the Federal Deposit Insurance Corporation ("FDIC"). (*Id.* ¶ 4). Further, they were not registered with the United States Securities and Exchange Commission ("SEC") or any other securities-regulatory authority. (*Id.*). As of March 2021, Celsius held the equivalent of $10 billion from the sale of these unregistered securities,

which peaked at over $25 billion later that year. (*Id.*). However, by June of 2022, the value of a Celsius token fell to $0.28 and consequently the value of Celsius's holdings plummeted. (*Id.* ¶ 210).

On the same date that the instant Civil Action was filed, Celsius and certain of its affiliates (the "Celsius Debtors") petitioned for bankruptcy protection in the United States Bankruptcy Court for the S.D.N.Y. *See In re Celsius Network LLC, et al.*, S.D.N.Y. Bankr. No. 22-10964 (the "Bankruptcy Proceeding"). The Bankruptcy Proceeding was filed on July 13, 2022 at 8:10 p.m., *see id.* ECF No. 1, whereas the instant Civil Action was filed on July 13, 2022 at 10:24 p.m. (ECF No. 1). To date, 308 claimants have sought reimbursement for losses suffered as a result of investing in Celsius's products and services. *See* S.D.N.Y. Bankr. No. 22-10964, Claims Register.

Before the Lead Plaintiffs in the instant Civil Action were appointed, a Stipulation between the Official Committee of Unsecured Creditors and the Celsius Debtors was filed on February 14, 2023 in the Bankruptcy Proceeding, pursuant to which the Celsius Debtors assigned their claims against former Celsius directors, officers, and employees (including the Moving Defendants) to a litigation trust. *See* S.D.N.Y. Bankr. No. 22-10964, ECF No. 2054-1. The litigation trust would: (1) be established in connection with the confirmation of the Celsius Debtors' Chapter 11 plan of reorganization; and (2) distribute any recovery obtained to the creditors in a manner to be determined by the Bankruptcy Court. *Id.* The Stipulation was approved by the Bankruptcy Court on March 8, 2023. *See id.* ECF No. 2201.

On July 13, 2023, an indictment that had been filed under seal two days earlier on July 11, 2023 was unsealed revealing that Mr. Mashinsky had been indicted on criminal charges in the S.D.N.Y. related to his conduct in operating Celsius. *See* S.D.N.Y. Crim. No. 23-347 (the "Criminal Case"). Also on July 13, 2023, the SEC, the Commodity Futures Trading Commission (the

"CFTC'), and the Federal Trade Commission (the "FTC") each separately filed enforcement actions against Celsius and Mashinsky. *See* S.D.N.Y. Civil No. 23-6005, No. 23-6008, and No. 23-6009. The FTC Action also named Leon and Goldstein as defendants therein. *See* S.D.N.Y. Civil No. 23-6009.

On September 12, 2023, the Bankruptcy Court entered a Stipulation staying the SEC Action, the CFTC Action, and the FTC Action, as well as any equitably subordinated claims on behalf of the litigation trust, pending the disposition of the Criminal Case brought against Mashinsky. *See* S.D.N.Y. Bankr. No. 22-10964, ECF No. 3450. On November 9, 2023, the Bankruptcy Court issued an Order confirming the Chapter 11 Plan, which included vesting a Litigation Administrator with the authority to pursue claims on behalf of the bankruptcy estate of the Celsius Debtors. *Id.* ECF No. 3972.

As the Criminal Case was still pending, on January 24, 2024, this Court followed the Bankruptcy Court's lead and stayed this Civil Action pending resolution of the Criminal Case. (ECF No. 98).

On July 10, 2024, the Litigation Administrator filed an adversary proceeding (the "Main Adversary Proceeding") in the S.D.N.Y. Bankruptcy Court on behalf of the Celsius Debtors against, among others, Mr. Mashinsky, Leon, Goldstein, Urata-Thompson, Beaudry, Ms. Meehan, AMVH, and K1, asserting thirty-six claims on behalf of those who held accounts with Celsius for, *inter alia*, breach of fiduciary duties, breach of contract, fraud, avoidance and recovery, and equitable subordination. *See* S.D.N.Y. Bankr. Adv. Proc. No. 24-3667, ECF No. 1. However, the Bankruptcy Court then stayed the Main Adversary Proceeding on September 5, 2024 pending the disposition of the Criminal Case brought against Mashinsky. *Id.* ECF No. 21.

On December 3, 2024, Mr. Mashinsky entered a plea of guilty to count two (commodities fraud) and count five (securities fraud) of the Indictment in the Criminal Case. *See* S.D.N.Y. Crim. No. 23-347, unnumbered ECF entry following ECF No. 108.

On January 21, 2025, the Bankruptcy Court ordered Mr. Mashinsky, Leon, Goldstein, Urata-Thompson, Beaudry, Ms. Meehan, AMVH, and K1 to respond to the complaint in the Main Adversary Proceeding. *See* S.D.N.Y. Bankr. Adv. Proc. No. 24-3667, ECF No. 35. Nonetheless, the instant Civil Action remained stayed pending Mr. Mashinsky's sentencing.

On May 8, 2025, Mr. Mashinsky was sentenced in the Criminal Case. *See* S.D.N.Y. Crim. No. 23-347, ECF No. 158. This Court then issued a scheduling order setting a briefing schedule for the instant Motion. (ECF No. 132).

The Moving Defendants now move to transfer the instant Civil Action to the S.D.N.Y. They argue in support that, *inter alia*: the Civil Action should be transferred pursuant to: (1) 28 U.S.C. § 1404 because of its substantial nexus with the aforementioned ongoing cases filed in the District Court in the S.D.N.Y.; and (2) 28 U.S.C. § 1412 because it is intertwined with the aforementioned ongoing matters pending in the S.D.N.Y. Bankruptcy Court. (ECF No. 133). Tellingly, the Lead Plaintiffs "do not oppose the transfer of this action to the [S.D.N.Y.]" (ECF No. 135 p. 1).

Defendant Wintermute similarly "does not … oppose the Motion to Transfer." (ECF No. 136 p. 1). However, Wintermute points out that it does not concede that this Court has personal jurisdiction over it, and further asserts that its right to assert a personal-jurisdiction defense should be preserved if this Civil Action is ultimately transferred to the S.D.N.Y. (ECF No. 136 pp. 3, 4). In a reply, the Moving Defendants advise that they do not oppose Wintermute's request to have its right to assert a defense of lack of personal jurisdiction preserved. (ECF No. 138 pp. 3, 4).

**DISCUSSION**

I.      **Governing Law**

    A.      **28 U.S.C. § 1404**

28 U.S.C. § 1404 provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

This Court will not restate the standard to be applied for determining whether to transfer a case to a different venue pursuant to Section 1404(a), because that standard has been already enunciated and is well-settled. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (setting forth the standard and the factors to be considered); *see also In re Amendt*, 169 F.App'x 93, 96 (3d Cir. 2006) (reiterating the holding in *Jumara*). When deciding whether to transfer a case to a different District Court, the courts balance public and private interests in determining "whether the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (internal quotation marks and citations omitted). This Court possesses the broad discretion to transfer a case to a federal district court where the case might have been brought. *See Jumara*, 55 F.3d at 875; *id.* at 877 n.3; *id.* at 883.

    B.      **28 U.S.C. § 1412**

28 U.S.C. § 1412 provides a further basis for a transfer to another District Court when a related bankruptcy proceeding has been filed therein:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

The "interest of justice" standard is a "broad and flexible" standard to be applied on a case-by-case basis. *Perno v. Chrysler Grp., LLC*, No. 10-cv-5100, 2011 WL 868899, at \*4 (D.N.J. Mar. 10, 2011) (internal quotation marks and citation omitted).

## II.    Transfer is Warranted Pursuant to 28 U.S.C. § 1404

It is apparent that it would be far more appropriate for the instant Civil Action to proceed in the United States District Court for the S.D.N.Y.  The following factors favor a transfer of this case.

First, the Bankruptcy Proceeding and the Main Adversary Proceeding were filed in the S.D.N.Y. *See* S.D.N.Y. Bankr. No. 22-10964; S.D.N.Y. Bankr. Adv. Proc. No. 24-3667. Although the Chapter 11 plan was confirmed, the Main Adversary Proceeding remains pending and seeks relief on behalf of the Celsius creditors in conjunction with the Bankruptcy Proceeding. The relief sought therein overlaps with the relief sought in the instant matter.

Second, at least twenty-five appeals to the S.D.N.Y. District Court have been generated from the decisions issued by the Bankruptcy Court in the Bankruptcy Proceeding, in the Main Adversary Proceeding, and in related Adversary Proceedings, and several of those appeals are still pending and active. *See, e.g., Mulley v. Celsius Network LLC*, S.D.N.Y. Civil No. 25-7710; *Cella MLo v. Meghji*, S.D.N.Y. Civil No. 25-5632.

Third, the SEC Action, which seeks to enjoin Mashinsky from selling crypto-asset securities and "to disgorge all ill-gotten gains in the form of any benefits of any kind derived from the illegal conduct alleged," S.D.N.Y. Civil No. 23-6005, ECF No. 1 p. 50, is on the cusp of being active. *See id.* ECF No. 25 (order entered on December 5, 2025 granting parties an opportunity to confer on how to proceed following the restoration of federal appropriations that had previously lapsed).

Fourth, the CFTC Action, which seeks to enjoin Mashinsky from engaging in the trading of digital assets that are commodities and to require Mashinsky "to make full restitution by making whole each and every customer or investor," S.D.N.Y. Civil No. 23-6008, ECF No. 1 p. 40, is currently the subject of settlement negotiations between Mashinsky and the CFTC and is thus being actively litigated. *See id.* ECF No. 27 (order entered on November 19, 2025 staying the CFTC Action due to the aforementioned settlement discussions).

Fifth, the FTC Action, which seeks to enjoin Mashinsky, Leon, and Goldstein from engaging in the offering of cryptocurrency and to recover damages on behalf of consumers who were allegedly duped by those Defendants, is being actively litigated. *See* S.D.N.Y. Civil No. 23-6009, ECF No. 127 (order entered on November 19, 2025 setting forth a discovery schedule).

Sixth, although Mashinsky entered a plea of guilty on December 3, 2024 to two counts brought in the Criminal Case, was sentenced on May 8, 2025, and is currently incarcerated, *see* S.D.N.Y. Crim. No. 23-347, ECF Nos. 112, 158, all of the aforementioned civil and bankruptcy matters in the S.D.N.Y. repeatedly refer to the Criminal Case.

Seventh, the Civil Action pending before this Court does not present a true local controversy that would tend to favor retaining it in the District of New Jersey. This far-reaching case concerning fraud in the area of cryptocurrency is clearly a matter of national concern, as can be seen by the multitude of parties involved in all of the matters in the S.D.N.Y. District Court and Bankruptcy Court that are criminal and regulatory in nature.

Eighth, the overlap between the parties, the claims asserted, and the recovery sought in the instant Civil Action and in all of the District Court and Bankruptcy Court matters in the S.D.N.Y. is stark. To avoid prejudicing any party, and for the purposes of coordination of the intertwining

claims and of administrative efficiency, the best course of action would be to transfer the Civil Action to the S.D.N.Y.

### III.    Alternatively, Transfer is Warranted Pursuant to 28 U.S.C. § 1412

Alternatively, this Civil Action may be transferred to the S.D.N.Y. pursuant to Section 1412, because there is a fair amount of overlap between the claims asserted in this Civil Action and the claims being litigated in the S.D.N.Y. Bankruptcy Court. First, although a Chapter 11 Plan has been confirmed in the Bankruptcy Proceeding, *see* S.D.N.Y. Bankr. No. 22-10964, ECF No. 3972, the oversight and implementation of that Plan — and consequently the entire Bankruptcy Proceeding — is ongoing in the S.D.N.Y. Bankruptcy Court, and thus the Bankruptcy Proceeding's docket remains active. *See, e.g., id.* ECF No. 8281 (order entered on December 10, 2025 denying efforts by 174 former Celsius customers to block the Litigation Administrator from avoiding their withdrawals of their digital deposits with Celsius).

Second, as discussed above, the Main Adversary Proceeding remains pending and seeks relief on behalf of the Celsius creditors. The relief sought in that matter overlaps with the relief sought in the instant Civil Action.

Third, the Main Adversary Proceeding, wherein the Litigation Administrator seeks to recover assets on behalf of the Celsius Debtors from, among others, the Defendants in this Civil Action, is active. *See* S.D.N.Y. Bankr. Adv. Proc. No. 24-3667, ECF No. 161 (brief filed on December 12, 2025 by Litigation Administrator in support of continuing efforts to recover digital asserts from several of the Defendants named in the instant Civil Action in the District of New Jersey).

Fourth, more than 700 separate Adversary Proceedings that were instituted by the Litigation Administrator in the S.D.N.Y. Bankruptcy Court in 2024 are still listed as being active.

9

*See* S.D.N.Y. Bankr. No. 22-10964, Associated Cases Database. In addition, more than forty separate Adversary Proceedings have been instituted by the Litigation Administrator and are listed as being active in the S.D.N.Y. Bankruptcy Court in 2025. *Id.*

Upon transfer, the District Court in the S.D.N.Y. can determine whether the instant Civil Action is better-suited to remain with the District Court or whether it should be referred to the Bankruptcy Court for adjudication.[1]

## IV.    Wintermute's Reservation of a Personal Jurisdiction Defense

Wintermute does not oppose the Motion to Transfer, but with the caveat that it does not intend to waive a personal-jurisdiction defense that might be asserted either in this Court or the transferee court, *i.e.*, the S.D.N.Y. (ECF No. 136 pp. 2-4). Wintermute argues that it has not had an opportunity to respond to the Amended Complaint as of yet, because the Civil Action has been stayed. (*Id.* p. 2).

This Court holds that Wintermute has sufficiently preserved its right to assert a defense of lack of personal jurisdiction in the transferee district court by specifically asserting it is not waiving that defense in not opposing the Motion to Transfer. *See Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 549-50 (D.N.J. 2018) (holding that certain defendants did not waive the assertion of a personal-jurisdiction defense in the transferee court, as those defendants raised this issue before the transferor court). Indeed, it would be inequitable to deem Wintermute to have waived a

---

[1] The Moving Defendants also argued for transfer of the instant Civil Action under the first-filed rule based on the earlier original filing of the Main Adversary Proceeding when compared to this Court's appointment of Lead Plaintiffs to prosecute the instant Civil Action. (ECF No. 133 pp. 7-13). Having found that the Civil Action should be transferred pursuant to Section 1404(a) and Section 1412, the Court need not address that argument. The Court notes, however, that whether the first-filed rule is applicable to the transfer of a *civil* action to the venue wherein an earlier-filed *bankruptcy* case has been brought is questionable. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (explaining the first-filed rule may be applied when similar cases "in different federal district courts" are at issue (internal quotation marks and citations omitted)).

personal-jurisdiction defense when it has not had even had an opportunity to respond to the allegations asserted in the instant Civil Action.

## V.    Authority to Direct a Transfer

A Magistrate Judge possesses the authority to direct the transfer of a case to another District Court. A determination as to the transfer of a case under Section 1404(a) and Section 1412 is not dispositive, and is thus within a Magistrate Judge's authority. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This Court is also authorized to address the issue of a transfer before addressing the issue of personal jurisdiction. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011) (recognizing a court's authority to direct transfer of a case under Section 1404(a)); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (holding that while "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, ... a court may reverse the normal order of considering personal jurisdiction and venue"); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (holding that a court is authorized to address the propriety of a transfer, regardless of whether the transferring court has personal jurisdiction). Therefore, the Undersigned is authorized to direct the transfer of the instant Civil Action to another District Court.

## CONCLUSION

With several factors overwhelmingly weighing in favor of transfer of this Civil Action to the S.D.N.Y., the Motion to Transfer will be granted. Accordingly, for the reasons set forth above,

**IT IS** on this **18th** day of **December**, **2025** ORDERED that the Motion to Transfer (**ECF No. 133**) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall terminate ECF No. 133; and it is further

**ORDERED** the Clerk of the Court will take no action on the transfer of this Civil Action for fourteen days from the entry of this Opinion and Order pursuant to Local Civil Rule 72.1(c)(1)(C), and then shall transfer this Civil Action to the United States District Court for the Southern District of New York for further proceedings if no objections have been filed with this Court during that fourteen-day period.

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge

Dated: December 18, 2025